UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
———

GREGORY PETTY,

                Plaintiff,          Case No. 2:24-cv-74

v.                                      Honorable Maarten Vermaat

REBECCA HORROCKS et al.,

                Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 4.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under

longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

Applying these standards, the Court will dismiss Plaintiff's Fourteenth Amendment procedural and substantive due process claims against the named Defendants.

Plaintiff's retaliation claims against the named Defendants remain in this case.

Plaintiff's motion to take judicial notice (ECF No. 6) will be denied as unnecessary.

## Discussion

**I.  Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Baraga Correctional Facility (AMF) in Baraga, Baraga County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues Assistant Deputy Warden Rebecca

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

Horrocks, Captain Chester Dums, Resident Unit Manager Lance Miller, Sergeant Colleen Borgen, and Regular Unit Officer Peter Capello in their individual capacities.

Plaintiff alleges that on March 18, 2022, he submitted a complaint for certified mail to the state court against AMF employee Chaudier. (ECF No. 1, PageID.4.) Plaintiff states that the Baraga Circuit Court Clerk issued a summons, which was to expire on March 29, 2022. (*Id.*) On March 29, 2022, non-party Wendy J. Goodreau returned Plaintiff's legal documents to him for service on Chaudier. (*Id.*) On April 1, 2022, non-party Sergeant Dugan warned Plaintiff that his mail had been opened, photocopied, and resealed and that he had angered a "higher up" by filing his suit on Chaudier. (*Id.*, PageID.5.) Sergeant Dugan warned Plaintiff that "they" were just getting started with him and that he should keep "his head low because they may be coming after you hard within the next few days." (*Id.*)

On April 4, 2022, Defendant Capello told Plaintiff that Defendant Dums had ordered Plaintiff's television be confiscated until he agreed to drop his lawsuit against Defendant Chaudier. (*Id.*, PageID.6.) Plaintiff protested that such an action violated policy and Defendant Capello stated that they did not care about policy, and he would be taking Plaintiff's television. Defendant Capello told Plaintiff that if he agreed to drop the suit, he would get his television back, but Plaintiff stated that he was not going to dismiss the suit. (*Id.*) Plaintiff's television was confiscated while Plaintiff was in the yard. (*Id.*, PageID.7.)

Plaintiff subsequently refused to allow Defendant Capello to close the food slot and demanded that Defendant Capello go get his television. Defendant Capello stated that the only way Plaintiff would be getting his television back was if he dropped his lawsuit. (*Id.*) Plaintiff asked to speak to shift command and Defendant Capello told him that would be a waste of time and walked away. (*Id.*)

4

Shortly thereafter, Defendant Borgen came to Plaintiff's cell and Plaintiff reported the confiscation of his television. (*Id.*) Defendant Borgen asked if Plaintiff was on loss of privileges. Plaintiff stated that he was not and was also not in the incentive in segregation program. Defendant Borgen asked why, and Plaintiff stated that it was because policy prohibited Security Threat Group (STG) Members from participating in the program. (*Id.*) Defendant Borgen said, "Oh, you're STG II?" (*Id.*) Plaintiff stated that he was, and Defendant Borgen told Plaintiff that she would be right back and moved away from Plaintiff's cell. (*Id.*)

Upon returning to Plaintiff's cell, Defendant Borgen told Plaintiff that she had been instructed not to return Plaintiff's television to him until he dropped his lawsuit. Defendant Borgen explained that she could not "break rank" and asked Plaintiff if he was going to give up his food slot. (*Id.*, PageID.9.) Plaintiff refused and said, "Get away from my cell." (*Id.*)

A while later, Defendant Dums approached Plaintiff's cell and stood at a distance. Plaintiff asked if he was responsible for instructing Defendant Capello to confiscate his television and Defendant Dums said that he was, and that the television would not be returned until Plaintiff agreed to drop his suit against Chaudier. (*Id.*, PageID.10.) Plaintiff expressed his intention to exhaust his remedies against Defendant Dums so that he could file a lawsuit against him. Defendant Dums replied that Defendant Horrocks had instructed the Grievance Coordinator not to give Plaintiff any grievance forms and that unit staff had been told not to take any kites from Plaintiff that were addressed to the Grievance Coordinator. (*Id.*) Plaintiff removed his hand from the food slot and Defendant Dums closed it and walked away. (*Id.*)

On April 5, 2022, Plaintiff spoke to Defendant Miller who stated that he could not help Plaintiff. when Plaintiff pointed out that he was a Resident Unit Manager and could order officers to retrieve the television, Defendant Miller stated "[t]his is way over my head; the word came

5

down from [Assistant Deputy Warden] Horrocks to confiscate your TV until you drop the suit you filed on Chaudier." (*Id.*, PageID.11.) When Plaintiff threatened to file a grievance on Defendant Miller, Defendant Miller responded that Plaintiff was on modified access and that the Grievance Coordinator had been instructed not to give Plaintiff any grievance forms. (*Id.*)

On April 7, 2022, Plaintiff asked Defendant Horrocks about the confiscation of his television. Defendant Horrocks stated, "Damn right, I told the staff to confiscate and detain your TV until you dropped the lawsuit you filed on my best friend, Officer Chaudier." (*Id.*, PageID.12.) Defendant Horrocks continued, "You made a bogus complaint against my friend in order to ruin her career, and I'm not going to allow you to get away with it." (*Id.*) Plaintiff stated his intention to exhaust his administrative remedies and file a lawsuit on Defendant Horrocks, who replied that she had instructed the Grievance Coordinator not to forward any grievance forms to Plaintiff. (*Id.*) Defendant Horrocks also told Plaintiff that she had instructed unit staff not to pick up any kites from Plaintiff to the Grievance Coordinator. (*Id.*) Plaintiff said he would see Defendant Horrocks in court, and she said that she was looking forward to getting Plaintiff's lawsuit dismissed for failure to exhaust. (*Id.*)

Plaintiff seeks compensatory and punitive damages, as well as declaratory relief.

## II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that

6

is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Due Process

Plaintiff appears to be asserting a procedural due process claim regarding the deprivation of his television. Plaintiff's due process claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an

adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivations of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530–36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479–80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, numerous state post-deprivation remedies are available to him. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. Mich. Dep't of Corr., Policy Directive 04.07.112, ¶ B (effective Apr. 26, 2021). Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. Mich. Comp. Laws § 600.6419; MDOC Policy Directive 03.02.131 (effective Mar. 27, 2017). Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments or officers." Mich. Comp. Laws § 600.6419(1)(a) (eff. Nov. 12, 2013). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property. Accordingly, Plaintiff's procedural due process claims will be dismissed.

Plaintiff also asserts a violation of his substantive due process rights under the Fourteenth Amendment, which prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV. "Substantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). "Substantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). "Conduct shocks the conscience if it 'violates the decencies of civilized conduct.'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998) (quoting *Rochin v. California*, 342 U.S. 165, 172-73 (1952))). The Sixth Circuit has held that framing an inmate by planting evidence may violate substantive due process where a defendant's conduct shocks the conscience and constitutes an "egregious abuse of governmental power." *Cale v. Johnson*, 861 F.2d 943, 950 (6th Cir. 1988), *overruled in other part by Thaddeus-X v. Blatter*, 175 F.3d 378, 388 (6th Cir. 1999); *see also Davis v. Gallagher*, No. 1:16-cv-1405, 2016 WL 7403941, *4 (W.D. Mich. Dec. 22, 2016); *Robinson v. Schertz*, No. 2:07-cv-78, 2007 WL 4454293 (W.D. Mich. Dec. 14, 2007).

"Where a particular [a]mendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that [a]mendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Albright*, 510 U.S. at 273–75 (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)). If such an

9

amendment exists, the substantive due process claim is properly dismissed. *Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013).

In this case, the First Amendment provides an explicit textual source of constitutional protection for Plaintiff's retaliation claims. Thus, the standard applicable to that source, the First Amendment right to be free from retaliation, and not the more generalized notion of substantive due process should be applied. *Graham*, 490 U.S. at 395; *see also Bell v. Johnson*, 308 F.3d 594, 610 (6th Cir. 2002) (holding that, after *Graham*, the First Amendment standard is the sole source of substantive protection); *Brandenburg v. Housing Auth. of Irvine*, 253 F.3d 891, 900 (6th Cir. 2001) (A "substantive due process right to free speech is duplicative of [a] First Amendment retaliation claim."). Moreover, Plaintiff fails to allege conduct that is sufficiently outrageous to support a substantive due process claim. *Cf. Cale v. Johnson*, 861 F.2d 943, 950 (6th Cir. 1988) (holding that framing an inmate by planting evidence may violate substantive due process where a defendant's conduct shocks the conscience and constitutes an "egregious abuse of governmental power"), *overruled in other part by Thaddeus-X*, 175 F.3d at 388.

Consequently, Plaintiff's substantive due process claim will be dismissed.

**B.    Retaliation**

Plaintiff claims that Defendants retaliated against him for filing a lawsuit against a prison employee in violation of the First Amendment. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a


plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

As set forth above, Plaintiff makes specific factual allegations against each of the named Defendants in support of his assertion that they deprived him of his television solely because he had filed a lawsuit against a prison employee. It is not entirely clear whether the confiscation of a television is sufficiently adverse for purposes of a First Amendment retaliation claim. Nonetheless, at this point in the litigation, the Court will not dismiss Plaintiff's First amendment retaliation claims.

### III.     Motion to take Judicial Notice

Plaintiff has filed a motion requesting that the Court take judicial notice of MCL § 691.1408, which Plaintiff claims prevents the MDOC from indemnifying Defendants and bars the Michigan Attorney General from representing Defendants in this action. (ECF No. 6.) The Court notes that the statute cited by Plaintiff, contrary to Plaintiff's interpretation, actually allows a governmental agency to furnish an attorney to an employee, advise the employee, and indemnify the employee. MCL § 691.1408(1) and (3). Moreover, Plaintiff's motion does nothing more than purport to make the Court aware of "necessary information" without requesting any specific relief. (ECF No. 6, PageID.35.) Therefore, Plaintiff's motion will be denied as unnecessary.

### Conclusion

The Court will grant Plaintiff leave to proceed *in forma pauperis* and will deny as unnecessary Plaintiff's motion to take judicial notice (ECF No. 6). Having conducted the review required by the PLRA, the Court determines that Plaintiff's Fourteenth Amendment procedural and substantive due process claims against each of the named Defendants will be dismissed for

failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's First Amendment retaliation claims against the named Defendants remain in the case.

An order consistent with this opinion will be entered.

Dated:  September 10, 2024                                  /s/ *Maarten Vermaat*
                                                            Maarten Vermaat
                                                            United States Magistrate Judge